IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RUBEN VASQUEZ-PADILLA | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. PX 16-3740 |
| MEDCO PROPERTIES, LLC, *et al.*, | * | |
| Defendants. | * | |

******

**MEMORANDUM OPINION AND ORDER**

This Memorandum Opinion and Order address the final phase of Plaintiff Ruben Vasquez-Padilla's Motion for Default Judgment, assessment of damages. ECF No. 19. On April 3, 2018, default judgment as to Defendants' liability was granted to Vasquez-Padilla, and a hearing on damages was held on May 15, 2018. For the reasons stated herein, Vasquez-Padilla is awarded $127,138.10 in damages.

**I.   BACKGROUND**

Plaintiff Ruben Vasquez-Padilla ("Vasquez-Padilla") is a citizen of the State of Delaware employed in landscaping. ECF No. 12 at ¶ 4; Pl. Ex. 10. Defendants Medco Properties, LLC ("Medco") and Potomac Foods Company-II, Inc. ("PFC") are both Maryland based companies with their principal place of business in Maryland. ECF No. 12. at ¶ 5–6. At all times relevant to this case, Medco was the owner and/or operator, along with its agent, Defendant PFC, of the Golden Corral, located at 301 E. Naylor Mill Road, Salisbury, Maryland. *Id.* at ¶ 6.

Vasquez-Padilla filed his Complaint with this Court on November 18, 2016, alleging that he suffered physical and emotional injuries as a result of slipping and falling on Defendants' property. Defendants did not answer the Complaint or otherwise respond, and on April 5, 2017,

1

the Clerk issued an Order of Default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. ECF No. 9. After several pleadings related to default judgment (and thus several additional opportunities for the Defendants to participate in this litigation), the Court entered default judgment as to Defendants' liability for negligence on April 3, 2018. ECF Nos. 19 & 20. A hearing to determine Vasquez-Padilla's damages was held on May 15, 2018. ECF No. 23.

## II. FACTS ESTABLISHED AT HEARING

The following facts were established at the damages hearing. On February 16, 2014, at approximately 9:30 a.m., Vasquez-Padilla parked his car in the parking lot of the Golden Corral and began walking toward the restaurant. The temperature was just above freezing and dry, and numerous other cars were parked in the parking lot. *Id.* at ¶¶ 8, 10. Although Vasquez-Padilla "maintain[ed] a proper and vigilant outlook," he slipped on ice and fell to the ground and was injured. ECF No. 12 at ¶¶ 8–11. Vasquez-Padilla suffered a serious injury to his left knee, resulting in immediate and persistent intense pain and swelling. *See* Pl.'s Ex. 1. For well over a week, Vasquez-Padilla suffered swelling and pain in his left knee which did not subside. Accordingly, Vasquez-Padilla sought medical attention at Wilmington Hospital. Pl.'s Ex. 2. Vasquez-Padilla was given a brace to stabilize his knee, and referred to seek further treatment at Christiana Care, where x-rays were performed. Pl. Ex's 1 & 4. After reviewing Vasquez-Padilla's x-rays, Christiana Care recommended that Vasquez-Padilla consult with an orthopedic doctor "as soon as possible," and to "[r]eturn to the ER if symptoms worsen." Pl. Ex. 4.

After several weeks of persistent and acute pain that largely made his work in landscaping impossible, Vasquez-Padilla was seen by doctors at First State Orthopedics on April 1, 2014. Pl. Ex. 5. Vasquez-Padilla's knee was aspirated and injected with a local anesthetic and Kenalog, a corticosteroid used to treat inflammation in the body. *Id.* He was directed to refrain

from work and rest his knee. *Id.* A follow-up appointment was scheduled for June to assess if surgery was necessary. *Id.* Around this time, Vasquez-Padilla was fired from his job as a landscaper at Forever Green Landscaping because his injury left him unable to work a full work-week. *See* Pl. Ex. 10. He was then hired by First Impressions Landscaping. *Id.*

Several weeks passed, and Vasquez-Padilla's symptoms showed little to no improvement. First State Orthopedics ordered an MRI of Vasquez-Padilla's injury, which revealed a "tear of the medial meniscus" and "a tremendous amount of marrow edema on the weight bearing surface of the medial femoral condyle." Pl. Ex. 5. An arthroscopy of the left knee was thus recommended and scheduled for the end of July. *Id.*

Throughout June and July, Vasquez-Padilla attempted to work, but because of his knee injury, he could only perform the physical labor required of his job for twenty (20) hours per week. Consequently, First Impressions Landscaping terminated Vasquez-Padilla. *See* Pl. Ex. 10.

On July 29, 2014, First State Orthopedics successfully completed an arthroscopic procedure on Vasquez-Padilla's left knee. *Id.*; *see also* Pl. Exhs. 8 & 9. He was ordered to rest for around three weeks following the surgery. On August 11, Vasquez-Padilla was permitted to return to work on "modified duty," and at or around August 24, Vasquez-Padilla returned to work full-time. Pl. Ex. 5. Even after returning to work and through today, Vasquez-Padilla continues to experience pain and stiffness while playing with his daughter and working.

### III. DISCUSSION

Upon entry of default judgment, the well-pleaded factual allegations of the complaint regarding liability are deemed admitted, in contrast to the allegations regarding damages. *SEC v. Lawbaugh,* 359 F. Supp. 2d 418, 422 (D. Md.2005); Fed. R. Civ. P. 8(b)(6) (a defaulting party is

deemed to admit factual allegations of the plaintiff's complaint "other than [those] relating to the amount of damages"). Before awarding damages, the court must consider evidence presented in support. "Where the amount ... is uncertain, the court is required to make an independent determination of the sum to be awarded." *J & J Sports Prods. v. Melgar*, No. PJM 11–3339, 2012 WL 1852270 (D. Md. May 15, 2012) (citations and quotation marks omitted).

II. ANALYSIS

As the Court has already granted default judgment to Vasquez-Padilla against Defendants on the issue of liability, the sole remaining question is the amount of damages owed by Defendants. *See* ECF No. 20. Vasquez-Padilla has requested $20,000 for the medical bills incurred in treating his injury, $9,012.00 in lost wages, and $100,000 for pain and suffering. He testified regarding the impact of his injury on his daily life, and offered ample documentary evidence as to his lost wages and medical costs. The Court addresses each request in turn.

First, Vasquez-Padilla testified, and the record evidence supports, that he was unable to work for intermittent periods following February 16, 2014, because of his injury. *See* Pl. Ex. 10. Vasquez-Padilla submitted detailed documentation of the exact hours missed from February 17 through August 24, 2014 because of his injury. This record, and the relevant law, supports an award of $9,012.00 in lost wages. *See, e.g. Burke v. United States*, 605 F. Supp. 981, 997 (D. Md. 1985) (awarding actual wages lost "as a direct result of the [defendant's] negligence").

Second, as for medical expenses, Vasquez-Padilla has amply supported an award for medical costs, although the records necessitate a slight downward modification. The medical records and bill submitted reflect that Vasquez-Padilla incurred $18,126.10 in costs, as follows: $263.00 at Wilmington Hospital, Pl. Ex. 2; $2,033.10 at Christiana Care, Pl. Exs. 1 & 3; $13,894.00 at First State Orthopedics; $2,784.00 at First State Surgery Center, LLC; and $952.00

4

from Outpatient Anesthesia Specialists, Pl. Ex. 5. Generally, Maryland courts consider medical expenses when assessing damages. *See Burke*, 605 F. Supp. at 989; *McAlister v. Carl*, 233 Md. 446, 450 (1964); *Rhone v. Fisher*, 224 Md. 223, 225 (1961); *Ihrie v. Anthony*, 205 Md. 296, 305–06 (1954). Accordingly, Vasquez-Padilla is awarded $18,126.10 for his medical expenses.

Finally, Vasquez-Padilla testified at the May 15 hearing regarding an appropriate award of damages for his pain and suffering. Such damages are awarded when the weight of the evidence shows that the plaintiff experienced physical or emotional pain and suffering as a direct result the injury caused by a defendant's negligence. *See e.g. Konka v. Wal-Mart Stores, Inc.*, 133 F.3d 915, 1998 WL 24378 at *5-6 (4th Cir. Jan. 26, 1998) (affirming the district court's grant of pain and suffering damages). Vasquez-Padilla credibly testified that he continues to experience intermittent pain in his left leg, which is often exacerbated by the long days and heavy labor required of his work as a landscaper. Medical records further support Vasquez-Padilla's testimony, indicating that his left leg will never return to full strength, and that he will likely continue to experience stiffness in his knee. The Court also notes that Vasquez-Padilla was twice fired while recovering from the incident because the lingering effects of his injury and forced to find a new job, underscoring the unpredictable nature of his occupation and special importance of his physical health. Vasquez-Padilla's knee pain and stiffness also make it difficult to play with his young daughter. Considering these factors, and taking into account Vasquez-Padilla's young age, the severity of his injury, and his occupation, the Court finds that his requested award of $100,000 for pain and suffering is both well-supported and warranted in this case.

### III. CONCLUSION

Based on the foregoing, it is this 1st day of June, 2018, by the United States District Court for the District of Maryland, ORDERED that:

1. Plaintiff RUBEN VASQUEZ-PADILLA's Motion for Default Judgment, ECF No. 19 is GRANTED as to damages;

2. Plaintiff RUBEN VASQUEZ-PADILLA is awarded $9,012.00 in lost wages, $18,126.10 for medical costs, and $100,000 for non-economic damages; and

3. The Clerk SHALL TRANSMIT copies of this Order to the Defendants and counsel for the Plaintiff and CLOSE this case.


 06/01/2018  
Date

/s/  
Paula Xinis  
United States District Judge